UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ALABAMA

HUNTSVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| V. § | NO. 4:23-CR-00383-CLM-NAD |
| § | |
| NICHOLAS JOHN CARUSO (6) § | |

**OBJECTIONS TO PRE-SENTENCE REPORT**

Now comes Defendant NICHOLAS JOHN CARUSO, through the undersigned counsel, and submits these written objections to the Pre-Sentence Report ("PSR"), as prepared by U.S. Probation Officer Jennifer Reese, and would show the Court as follows:

**OBJECTION NO. 1**

**LOSS AMOUNT**

**Paragraphs 64 and 70**

The PSR reads that Defendant CARUSO should be assessed with the total fraud amount of the entire conspiracy, listed at $1,500,000 to $3,500,00 (Paragraph 64). However, the PSR acknowledges that CARUSO only performed approximately ten (10) refunds, and he was personally only paid about $50.00 (fifty dollars). This is because CARUSO only participated in the Noir company's scheme for about three (3) months. CARUSO was involved with Noir from approximately January 2022 to March 2022. The

Noir conspiracy was carried out by numerous persons from July 2020 to at least July 2022, per the Indictment.

### A.   USSG 2B1.1 APPLICATION

Paragraph 70 adds sixteen (16) levels for the supposed loss amount, noting that the conspiracy loss amount is estimated at $1,500,000 - $3,500,000.  Paragraph 70 reads:

> "**Specific Offense Characteristics:** Pursuant to §2B1.1(b)(1)(I), 16 levels are added because the loss amount was more than $1,500,000 and less than $3,500,000. The plea agreement reflects the stipulation of the parties that the total amount of loss throughout this conspiracy fell within this range. Thus, 16 levels have been added."

Note that Paragraph 70 reads that "this conspiracy" reflects this loss amount estimation, which included many more persons, much more activity than CARUSO.  It obviously does not reflect CARUSO'S limited time frame and refund amounts, and CARUSO'S lack of authority and control of the subject company and all persons involved.

### B.   SCOPE OF THE ACTIVITY

CARUSO only contracted with the subject company Noir for about three (3) months.  In that time period, CARUSO made approximately ten (10) refunds that totaled less than $20,000.00.  This is referenced in the PSR in Paragraph 56.

### C.   LIMITS OF ACCOUNTABILITY

CARUSO was only involved for a short period of time considering the length of the conspiracy, its scope, and the hierarchy of persons involved.  CARUSO was a low-

level participant, doing hands-on refunds, and he had no management or policy authority within this wide-spread conspiracy. CARUSO participated remotely and did not plan, direct, or make leadership decisions, other than facilitating the approximately ten (10) refunds referenced above.

### 1.  LIMITATION ON RESPONSIBILITY OF LOSS AMOUNT

<u>HUNTER CASE</u>

In *U.S. v. Hunter*, 323 F3d 1314, 1319 (2003), the Eleventh Circuit held that the district court must make individualized findings concerning the scope of the criminal activity undertaken by a defendant, and it must make individualized findings concerning the defendant's activities to determine the reasonable foreseeability. Thus, the case was remanded for sentencing.

In *Hunter*, the district court held simply that because each Defendant knew that he was part of a ring, he should be accountable for all the acts of all of the members. *Hunter* held that the district court erred in not making particularized findings as to the scope of each Defendant's agreement in the larger operation. *Hunter* at 1320. The court in *Hunter* at 1320 also noted that the U.S. Sentencing Guidelines establish that the fact that the defendant knows about the larger operation and agreed to perform a particular act, does not amount to acquiescence in the of the criminal enterprise as a whole, quoting *U.S. v. Campbell*, 279 F.3d 392, 400 (6th Cir. 2002) (a relevant factor in determining whether an activity is jointly undertaken is whether the defendant assisted in designing and executing the scheme), and *U.S. v. Studley*, 47 F.3d, 569, 575 (2d Cir. 1995) (mere

3

awareness of a much larger scheme is not enough to hold the defendant accountable for the activities of the entire conspiracy).

The Eleventh Circuit again quoted *Studley* at 576 in the *Hunter* holding, that

> "…because the defendant neither designed nor developed the telemarketing scheme, did not promote the scheme beyond his own sales efforts, was paid on a commission basis and received no share of profits, and did not assist any of the other sales representatives."

The Eleventh Circuit held that since the <u>defendant did not join the conspiracy until 2000</u> (conspiracy was from January 1997 to August 2000), he <u>therefore cannot be held accountable for conduct that occurred prior to his entry into the joint criminal undertaking</u>. *Hunter* at 1320 (underline added). The Eleventh Circuit also held that <u>due to the fact that a defendant cashed a certain number of counterfeit checks over a four-year period does not automatically support a finding that the defendant agreed to or acquiesced in the entire scope of the conspiracy</u>. *Hunter* at 1320 (underline added)

The Eleventh Circuit also basically followed *Hunter* in its holding in *U.S. v. Barry*, No. 23-12101 (11th Cir. 1-07-26), holding that the Defendant's activities are not automatically considered jointly undertaken criminal activity of the co-conspirators.

<u>ANOR CASE</u>

In a filing false tax returns case, a defendant in the case prepared certain tax returns that contained false information. The Eleventh Circuit in *U.S. v. Anor*, 762 Fed.Appx. 707 (2019) remanded Anor for sentencing holding that the district court did not make a particularized finding regarding the scope of Anor's agreement as required by

4

USSG §1B13(a)(1)(B).  The Eleventh Circuit held that Anor prepared false tax returns and also knew or should have known that there was a broader conspiracy, but these facts alone are not enough to show that Anor agreed to or acquiesced in the acts of the criminal enterprise as a whole. *Anor* at 712.

The *Anor* holding quoted *Hunter* in various places, including the following:

"**Our decision in *Hunter* illustrates the limits of sentencing accountability for low-level defendants who are convicted of participating in a broader conspiracy.**  The Defendants in *Hunter* were participants in a counterfeit corporate check-cashing ring that operated in South Florida. *Id* at 1316.  The ring was composed of three "levels" of participants – two individuals at the top who were responsible for printing the counterfeit checks; three individuals who were responsible for recruiting and occasionally driving the check-cashiers (called "runners") to cash the checks; and, at the bottom, nineteen runners. *Id*.  At sentencing, the district court held the defendants, who were runners, responsible for the total loss of the entire conspiracy, stating that the losses associated with the broader conspiracy were reasonably foreseeable to them. *Id*. at 1318." (bold added)

And:

"On appeal, we held that **reasonable foreseeability alone was not enough and that the district court erred by failing to "first determine the scope of the criminal activity [the defendants] agreed to jointly undertake**." *Id*. at 1320 (quotation marks omitted).  We explained that **"the Guidelines establish that the fact that the defendant knows about the larger operation, and has agreed to perform a particular act, does not amount to acquiescence in the acts of the criminal enterprise as a whole."** Id. Thus, the fat that the defendant cashed multiple checks, which made them responsible for those checks, did not "automatically" or "necessarily" support a finding that they knew the scale of the conspiracy, "let alone that [they] agreed to the full extent of that criminal activity." Id. at 1320-21.  Similarly, the mere fact that one of the defendants identified other runners working for a mid-level operative was "not enough to make her accountable for their conduct" without some other evidence "from which an agreement can be inferred." Id. at 1320…" (bold added)

5

ISAACSON CASE

The Eleventh Circuit in *U.S. v. Isaacson*, 752 F.3d 1291 (2014) held that the government's evidence did not adequately tie the subject investment to the scope of Isaacson's participation in the conspiracy. The court remanded the case for re-sentencing. The court relied on the *Hunter* case holding, as well as USSG 1B1.

2.   **DEFENDANT DID NOT ACQUIESCE TO TOTAL CONSPIRACY**

CARUSO has pled guilty and accepted responsibility for his role as a remote refund facilitator. CARUSO did cause several refunds to process (see A & B above and PSR ¶56) resulting in a relatively small amount of monies compared to the total estimated loss. CARUSO did not manage a group of people, establish protocols, set procedures or policies, or advise the upper hierarchy. CARUSO worked to get companies to send refunds, and he did cause approximately ten of these refunds.

CARUSO was therefore not aware of most of the persons involved, and he did not have contact with most of people in this conspiracy. CARUSO did not know the identities of the upper management persons, except for occasionally hearing a name. CARUSO still then did not know who all were involved or what activities were accomplished, except for generally knowing the existence of others.

3.   **DEFENDANT SHOULD NOT BE RESPONSIBLE FOR CONDUCT PRIOR TO OR AFTER HIS INVOLVEMENT**

CARUSO spent approximately three (3) months associated with Noir from about January to March 2022. When CARUSO started with Noir, the conspiracy time frame

was about three-fourths complete. Per the government's information, the conspiracy continued through about, or at least, July 2022.

CARUSO'S time period of January – March 2022 was the time frame that resulted in his approximately ten (10) refunds completed.

Respectfully submitted,

*/s/ John Teakell*
John Teakell
Law Office of John R Teakell
2911 Turtle Creek Blvd.
Suite 300
Dallas, TX  75219
Tele.   (214) 523-9076
Fax     (214) 523-9077

## CERTIFICATE OF SERVICE

I, John Teakell, hereby certify that on February 26, 2026, a copy of the foregoing Objections to the Pre-Sentence Report was served on the United States Attorney's Office and the U. S. Probation Office via ECF.

*/s/ John Teakell*
John Teakell
