FILED

2026 Apr-09  PM 04:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## <u>MIDDLE DIVISION</u>

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**AIMAN AKRAM KAIF, et al.**<br><br>**Defendants.** | **Case No. 4:23-cr-00383-CLM-NAD** |

### <u>OMNIBUS SENTENCING MEMORANDUM</u>

This Court is set to sentence David James Park, Jennifer Mireya Palma, Damian Wayne Scarlett, CK Chikong Tran, Nicholas John Caurso, and Tyree Samuel Tinsley on April 16, 2026. The United States submits this sentencing memorandum in advance of the hearings to aid the Court in determining the appropriate sentence for each Defendant.

### I.    BACKGROUND

Each Defendant has pled guilty to conspiracy to commit mail and wire fraud based on their participation in Noir's Organization, a conspiracy organized over the internet devoted to refund fraud—a fraud by which complicit parties purchase an item, have the purchase refunded, and then, through various means, keep the refunded item for personal use or to sell for profit.

### A.    Noir's Organization[1]

Noir's Luxury Refunds was a Telegram channel devoted to refund fraud. At its peak, it had over 8,000 members. The group, led by the Telegram user "Noir", offered refund fraud as a service. Customers paid Noir's Organization a fee in exchange for the group performing a fraudulent refund on his or her behalf. In addition, Noir's Organization acquired products for itself through refund fraud and then would sell them on eBay. The group also offered a "travel service," which would offer customers "discounted" flights and hotel accommodations the conspirators would obtain through fraud. Noir's Organization also offered fraud mentorships, teaching customers how to perpetrate refund-fraud schemes. The conspiracy lasted almost two years.

To organize and operate the enterprise, Noir's Organization used Google Sheets to receive and track refund orders.  The information collected through the Google Forms was stored on Google Sheets. Search warrants for Google Accounts associated with the conspiracy revealed several "order sheets" for Noir's Organization. Eventually, Noir's Organization migrated its refund order processing and tracking to ClickUp, a cloud-based project management tool.

---

[1] The information in this section is taken from a section of the plea agreements that is common to all Defendants and is contained in each of the Defendants' PSRs.

### B.    The Defendants' Roles in Noir's Organization

The Defendants were instrumental in administering the scheme. Noir's Organization employed "refunders" (individuals), support staff who interacted with customers, consultants who provided advice on how to commit refund fraud and advertise the service, and individuals who received and transferred the fraud proceeds.

### 1.    David James Park ("Plutus")

Park was a refunder for Noir's Organization. (PSR, ¶ 52.) In this role, Park had access to the Google Sheets and ClickUp project used by the conspiracy. (*Id*., ¶ 53.)   He also helped orchestrate Project Alpha, which Noir's Organization advertised could make conspirators up to $10,000 each month. (*Id*., ¶¶ 39, 55.) Project Alpha was a Noir's Organization initiative to recruit members to purchase items for the resale operation. (PSR, ¶ 39.) In exchange for their participation in the project, Noir's Organization would assist the volunteer with refunding an item he or she would keep. (*Id*.)

### 2.    Nicholas John Caruso ("Deaf")

Caruso was a refunder for Noir's Organization who also provided labeling services. (PSR, ¶ 55.) In this role, Caruso had access to the Google Sheets and ClickUp project used by the conspiracy. (*Id*., ¶ 56.) One of the tactics Caruso used was to pay "insiders," customer service employees, to process fraudulent refunds

on his behalf. (*Id.*, ¶ 58.) Caruso's labeling services, which aided Noir's Organization, would create false return-shipping labels for products. Caruso told fellow conspirators that he was doing 100 labels a day. (*Id.*, ¶ 60.) Caruso also provided advice on how the conspiracy should operate.



**Plutus** https://t.me/ShipsterOrg                                      14:51

In reply to this message

Regarding the suggestions customer support can always ctrl+F (name of telegram) to quickly navigate through. And it also makes it easier for us to keep track of what orders are being done as well as you guys in management can follow along with our progress.

But if Noir does pay someone to make a google spreadsheet          14:52
experts that may work better too.



**Deaf**                                                                        14:52

we wont miss orders if we get appropriately organized and "trained"

we need more order divisions, like "New Lead, order placed,          14:53
awaiting update, etc."

we should never go more than 3 hours without responding to           14:53
customers

I've gotten a lot of loyal customers simply for the fact that i        14:53
respond almost instantly

i think that should the base of the business, excellent and swift    14:54
customer service

### 3.    Jennifer Mireya Palma ("Bianca")

Palma provided customer support for Noir's Organization, received payments from customers, helped operate the travel service, and collected and

posted vouchers for the conspiracy. (PSR, ¶ 55.) In Noir internal chats, Palma also explained that she helped obtain replacement products by submitting fraudulent warranty claims.



### 4.    Damian Wayne Scarlett ("DashLoot")

Scarlett was a refunder for Noir's Organization. (PSR, ¶ 54.) He had access to the Google Sheets the conspiracy used to receive and track orders. (*Id.*, ¶ 53.) Scarlett also helped the conspiracy plan and execute new fraud methods. (*Id.*, ¶¶ 53-54.) For instance, Scarlett participated in Project Virtual, a brainstorming sessions conspirators conducted to develop ideas to grow the refund-fraud enterprise. (*Id.*) Scarlett was identified as a "KYC [Know-Your-Customer] Expert"

and was tasked with researching how to fraudulently open Virtual Credit Cards[2] that could be used to purchase large amounts of products that would then be fraudulently returned. (*Id.*, ¶ 53.) Scarlett also provided advice on how Noir's refund-fraud service should market itself and which retailers it should target. (*Id.*, ¶ 54.)

### 5.    CK Chikong Tran ("Radiant")

Tran was a consultant for Noir's Organization who provideed advice on how to structure the refund-fraud service and make it more effective. (PSR, ¶ 53.) He owned and operated his own refund-fraud service, Radiant's Elite Refunds. (PSR, ¶ 52.) An example of the advice Radiant provided to Noir is included below.

---

[2] A Virtual Credit Card is "a digital version of a credit card that uses a disposable number that's different from what's on the physical card." *What is a virtual credit card — and how do you get one?* CNBC.COM, Aug. 7, 2025, https://www.cnbc.com/select/what-is-a-virtual-credit-card/.

### 6.    Tyree Samuel Tinsley ("Tysamtin")

Tinsley handled logistics for Noir's Organization and sent and received money on the conspiracy's behalf. (PSR, ¶ 79 .) From June 29, 2020, through June 8, 2022, Tinsley received $1.4 million in refund-fraud proceeds into his bank account. (*Id*., at ¶ 82.) He made 27 wire transfers totaling $690,413.00 out of the account and into a cryptocurrency exchange.   He then would transfer the cryptocurrency as Noir directed. (*Id*., at ¶ 83.) He would also sell products Noir's Organization acquired through refund fraud on e-Bay, generating profits for the conspiracy. (*Id*., at ¶ 84.)

### C.    Noir's Organization Relationship to Refund Fraud Problem

Noir's Organization was part of a larger fraud ecosystem operating predominately through Telegram. Over the last few years, federal law enforcement has moved to curtail the harm being done by these refund-fraud groups. Cases have been brought in the United States District Courts for the Northern District of Oklahoma, the Western District of Washington, the Southern District of Florida, and the Northern District of Alabama:

- *Ten Members of International Cyber Fraud Ring Indicted for "Refund Fraud" Scheme Targeting Online Retailers*, Nov. 9, 2023, https://www.justice.gov/usao-ndok/pr/ten-members-international-cyber-fraud-ring-indicted-refund-fraud-scheme-targeting.

7

- *Dearborn, Michigan man, who used fake refund scheme to defraud retailers of more than $4 million, sentenced to three years in prison*, Dec. 19, 2024, https://www.justice.gov/usao-wdwa/pr/dearborn-michigan-man-who-used-fake-refund-scheme-defraud-retailers-more-4-million.

- *Five Men Indicted in Nationwide Refund and Payment Processing "Glitch" Scheme*, Sept. 24, 2025, https://www.justice.gov/usao-sdfl/pr/five-men-indicted-nationwide-refund-and-payment-processing-glitch-scheme.

Refund fraud continues to be a billion-dollar problem. According to a study by the National Retail Foundation, $849 billion dollars' worth of merchandise was returned in 2025, and 9% of those returns were fraudulent. *2025 Retail Returns Landscape*, NATIONAL RETAIL FEDERATION, Oct. 15, 2025, https://nrf.com/research/2025-retail-returns-landscape. And while the perception is that refund fraud only affects large corporations, the truth is that customers end up paying the price. Scott Knapp, Amazon's Vice President of Worldwide Buyer Risk Prevention, explains that organized refund fraud "cause[s] real harm not just to retailers across multiple channels, but ultimately to honest consumers through decreased inventory and increased costs across the industry." *Inside Amazon's fight against organized refund fraud*, Sept. 2, 2025, https://trustworthyshopping.aboutamazon.com/inside-amazons-fight-against-refund-fraud.

8

## II.   GUIDELINE CALCULATIONS

### A.   Loss Amount Calculation

The Defendants' offense level calculations under U.S.S.G. § 2B1.1 are primarily driven by the loss amount. Each Defendant is responsible for his or her own conduct as well as the actions of others that were (1) "within the scope of the jointly undertaken criminal activity," (2) "in furtherance of that criminal activity," and (3) "reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B)(i)–(iii). Thus, a "district court may hold participants in a conspiracy responsible for the losses resulting from the reasonably foreseeable acts of co-conspirators in furtherance of the conspiracy." *United States v. Hunter*, 323 F.3d 1314, 1319 (11th Cir. 2003). But it "must make individualized findings concerning the scope of criminal activity undertaken by a particular defendant." *United States v. Barry*, 163 F.4th 1346, 1350 (11th Cir. 2026) (quoting *United States v. Mateos*, 623 F.3d 1350, 1370 (11th Cir. 2010)). A defendant is not responsible for losses that occurred when he or she was not a member of the conspiracy because those losses are not within the scope of the jointly undertaken criminal activity. U.S.S.G. § 1B1.3, cmt. 2; *United States v. Word*, 129 F.3d 1209, 1213 (11th Cir. 1997) ("The district court erred when it used acts of the conspiracy occurring before Anders's involvement to calculate his sentence.").

### 1.    Methodology for Loss Attribution

The United States derived its loss amount calculations from analyzing spreadsheets found in conspirators' Google Drives. These spreadsheets contained the inputs from Google Forms that the conspiracy used to receive refund-fraud orders from customers. In the spring of 2022, the conspiracy transitioned from using Google Forms and Sheets for receiving and tracking orders to the project-management tool ClickUp. ClickUp generated emails for each received order, and these messages were located within conspirators' inboxes.

The FBI analyzed this data and calculated the losses reflected. The Google Sheets show more than 400 orders from August 21, 2021, through February 12, 2022. The value of these refunds was over $1.1 million. The ClickUp emails show over 180 orders totaling $484,285.26 from February 19, 2022, until May 21, 2022.

To determine the extent of each Defendant's involvement in the conspiracy, the FBI reviewed the evidence to identify each conspirator's first activity as well as the date (if any) a conspirator withdrew from the group. The chart below summarizes those findings. The sources of the entry and exit dates are further discussed below for the Defendants who have filed objections.

| Defendant | Entry Date | Exit Date | Losses |
|-----------|-----------|-----------|--------|
| David James Park | 1/26/2022 | 2/28/2022 | $99,574.77[3] |
| Nicholas John Caruso | 1/26/2022 | 4/6/2022 | $149,831.47 |
| Jennifer Mireya Palma | 1/26/2022 | - | $527,757.76 |
| Damian Wayne Scarlett | 1/01/2021 | - | $1,696,938.87 |
| CK Chikong Tran | 8/27/2020 | - | $1,696,938.87 |
| Tyree Samuel Tinsley | 6/29/2021 | - | $1,696,938.87 |

### 2.    Defendants' Objections to the Attributed Loss Amount

Several Defendants have filed objections to the attributed loss amount or made arguments about it in their sentencing memoranda. These objections should be overruled.

#### a.    *Nicholas Caruso*

Nicholas Caruso argues that he "did not know who all were involved or what activities were accomplished, except for generally knowing the existence of others" involved in the conspiracy, and so his loss amount should be limited to the refunds he personally conducted on behalf of Noir's Organization. (Doc. 245 at 6.) But the evidence establishes that Caruso was fully aware of the scope of the conspiracy while he was involved in it.

As he admitted in his plea agreement, Caruso had editor permissions for the Google Sheets Noir's Organization used to operate the conspiracy. (Doc. 140 at 12.) He also had access to the ClickUp project. (*Id.*). By having access to these

---

[3] $69,574.77 of this amount is attributed to Park's involvement in the Noir's Organization conspiracy. The remaining $30,000 is attributable to post-indictment refund fraud Park committed. (*See* Doc. 177 at 13.)

documents, Caruso would have seen every refund the group was receiving and processing, rendering the full scope of the criminal enterprise reasonably foreseeable to him. Caruso's knowledge is confirmed by his comments in the conspiracy's internal chats. Caruso admitted in his plea agreement to stating in the chats that Noir's Organization had placed $77,725.27 in fraudulent refund orders in a single day. (*Id.* at 13.)

Caruso also understood how lucrative refund fraud could be. He operated his own refunding service that received more than 250 orders for $30,000 worth of products. (*Id.*) In the internal chats, he expressed surprise that more "cartel people" were not doing refunding given the money one could earn, and he contemplated quitting his job to focus on refunding.

| | | |
|---|---|---|
| **N—** | Noir — @TheRefundBot | 16:53 |
| | He told me | |
| | He need to have that hoes money by the time he gets out | 16:53 |
| **D** | Deaf | 16:53 |
| | im surprised there are no like cartel people doing refunds | |
| | there is so much money in this | 16:54 |
| | its all 16 year old kids | 16:54 |



(*Id.*)

The "Deaf" persona is observed in the internal chats from January 26, 2022, until April 6, 2022, when he announced his intention to leave the group. The amount of losses during that time period was $149,831.47. Based on these facts, the Court can conclude that this sum represents losses within the scope of jointly undertaken criminal activity that was reasonably foreseeable to Caruso.

Caruso's reliance on *Hunter* is misplaced because the case is factually distinguishable. In *Hunter*, the Eleventh Circuit vacated the sentence and remanded for a new sentencing hearing because the record did not establish that "Hunter knew the scale of the conspiracy of which she was a part, let alone that she agreed to the full extent of that criminal activity." 323 F.3d at 1321. In contrast, the evidence here establishes that Caruso was fully aware of the scope of the conspiracy, understood the losses it was inflicting, and jointly undertook operating Noir's Organization with other conspirators.

13

### b.    *Jennifer Palma*

In her sentencing memorandum, Palma notes that the Court must make an individualized finding concerning the loss amounts and "requests that she not be ordered to pay for the full loss amount or the total number of victims involved in the multi-year conspiracy." (Doc. 248 at 4.) To the extent this constitutes an objection, it is undercut by Palma's own admissions.  Specifically, she admitted to receiving payments from customers, placing watermarks on "vouches," and receiving items obtained through refund fraud and selling them on behalf of the conspiracy. (Doc. 138 at 12.) She also organized the order tracking sheets for the travel service. (*Id*.). Internal chats show that she had access to the ClickUp project.

| | | |
|---|---|---|
| **B** | **Bianca**<br>In reply to this message<br>am i allowed to be ? | 19:29 |
| | bc i made a burner gmail | 19:29 |
| | to use | 19:29 |
| **N—** | **Noir — @TheRefundBot**<br>ye | 19:30 |
| **B** | **Bianca**<br>In reply to this message<br>i can dedicate wednesday to it | 19:30 |
| | add me to clickup @noirprivate | 19:32 |
| | carrrachel676@gmail.com | |

14

Palma was also a member of the internal conspiracy chat, and the United States is basing its attributable loss amount on the losses that occurred during the period covered by those communications (January 26, 2022, to April 27, 2022). Palma agreed to participate in refund fraud, and the scope of the losses caused by the conspiracy during her participation was reasonably foreseeable to her.

### c.     *CK Tran*

In his sentencing memorandum, CK Tran argues that "the appropriate loss amount for his guidelines would be $37,594.50" based on "a starting date of January 31, 2022 and ending on February 12, 2022." (Doc. 247 at 5.) He also previously filed an objection to the PSR stating that his participation in the conspiracy began in November 2021 and not July 2020 as alleged in the indictment. (Doc. 194 at 1.) Tran's involvement in the conspiracy, however, was deeper and more extensive, dating back to the conspiracy's origin.

Tran allowed the FBI to search his Telegram account. Messages in the account evidence that Tran's partnership with Noir dated back to early 2020. He told other users that he was an administrator of Noir's Market, a Telegram channel that, according to Tran's plea agreement, was used to advertise the conspiracy. (Doc. 179 at 12.)

15

| date | message |
|------|---------|
| 2020-03-17 21:09:54+00:00 | I'm an admin in Noir's Chat as well |
| 2020-03-17 23:29:55+00:00 | Also one of the official admins of AIOC, FuckKiki chat, and Noir's group |
| 2020-03-19 18:45:41+00:00 | If you want some assurance, I'm an admin of AIO Crime, Noir Chat, and FuckKiki's group |
| 2020-03-20 14:39:42+00:00 | If you want assurance, I'm an admin in AIOC Crime chat, Noir's market, FuckKiki's group |
| 2020-03-21 00:34:35+00:00 | I'm an admin in AIO Crime chat, Noir Chat, and FuckKiki's group |
| 2020-03-21 03:24:45+00:00 | If you want any assurance, I'm the admin of AIO Crime chat, Noir's market, FuckKiki's group |
| 2020-03-21 16:35:54+00:00 | Well I'm the admin in AIO Crime, Noir's Market, and FuckKiki's group |
| 2020-03-23 19:20:42+00:00 | If you want some assurance, I'm an admin of 4 big groups: AIO Crime, Noir's market, Moonlight market, and FUckKiki's group |
| 2020-03-27 03:23:19+00:00 | Aside from that, ifyou need some assurance, I'm an admin of AIO Crime, Noir's Narket, Moonlight Market, and FuckKiki's group |

In another message from 2020, Tran described himself as working together with Noir.

| 2020-03-14 23:36:15+00:00 | Noir referred you to me |
|---------------------------|-------------------------|
| 2020-03-14 23:36:21+00:00 | Because I am looking for a drop service |
| 2020-03-14 23:36:25+00:00 | And we also work together |

Tran was also assisting Noir in dealing with refund fraud service customers at that same time:

| date | message |
|------|---------|
| 2020-03-06 22:20:59+00:00 | Hey Radiant, I've reached out to Noir a few days ago still waiting on the 50% partial refund. I wasn't too sure if I should message an admin to get help or not |
| 2020-03-23 05:34:32+00:00 | I checked your case, and you messaged Noir 5 hours after the 24 hours so you are not applicable for a refund |
| 2020-03-23 05:36:10+00:00 | It's not my job to constantly check your guys update especially if Noir doesn't respond. |

These messages show that Tran was involved with the conspiracy back in the spring of 2020. Moreover, he was still listed as a participant in Noir's internal chat April 27, 2022 (the last day for which the government has records), and there is no evidence he withdrew from the conspiracy. *See United States v. Adetona*, 251 F. App'x 610, 615 (11th Cir. 2007) ("Where the defendant presents no evidence to

16

contradict the reasonable inference from the government's evidence on amount of loss, the district court does not err by relying on the evidence presented by the government.") Thus, his objection that he did not join the conspiracy until November 2021 or January 31, 2022, should be overruled, as should his request that the Court find his attributable loss to be $37,594.50, from a mere two-week window in January and February 2022.

### B.    Sophisticated Means Enhancement

The United States has objected to the Probation Office's failure to apply the sophisticated means enhancement under U.S.S.G. § 2B1.1(b)(10)(C) to Palma, Caruso, and Tinsley. (Docs. 149, 171, and 172.) In addition, Scarlett has objected to his PSR's application of the enhancement to him. (Doc. 249 at 7.).

Scarlett's objection should be overruled for the same reason the government's objection with respect to the other Defendants should be sustained. The crime here was complex and involved sophisticated means. Scarlett argues that "Telegram channels postings are not sophisticated means . . . . The use of the internet is not sophisticated means. Advising on opening up fake credit card accounts is not sophisticated means. Mailing empty boxes back as fake returns is not sophisticated means." (Doc. 249 at 2.) But "the proper focus is on the offense conduct as a whole, not on each individual step." *United States v. Moran*, 778 F.3d 942, 977 (11th Cir. 2015); *see also United States v. Ghertler*, 605 F.3d 1256, 1267

17

(11th Cir. 2010) ("There is no requirement that each of a defendant's individual actions be sophisticated in order to impose the enhancement. Rather, it is sufficient if the totality of the scheme was sophisticated."). The nature of the scheme combined with the level of obfuscation—using Telegram, operational accounts, and reshipping points, which were all intended to tie as little identifying information as possible to the fraud—warrant applying the enhancement.

### C.    10 or More Victims Enhancement

Tran objected to the application of the two-level enhancement under U.S.S.G. § 2B1.1(b)(2)(A)(i) for the offense involving more than ten victims.[4] (Doc. 194 at 1.) Tran admitted in his plea agreement that Noir's Organization targeted "a large swath of companies." (Doc. 179 at 5.) Moreover, the order sheets reflect more than ten victim companies. Thus, Tran's objection should be overruled.

## III.    CONCLUSION

The United States submits that the Court should calculate the initial offense levels and guideline ranges of the Defendants as follows:

---

[4] Park also objected to the application of this enhancement. (Doc. 195.) After conferring with counsel, however, the United States understands that Park will withdraw this objection.

| Defendant | CHC | Initial Offense Level | Guideline Range |
|---|---|---|---|
| David James Park | I | 12 | 10 to 16 months |
| Nicholas John Caruso | I | 16 | 21 to 27 months |
| Jennifer Mireya Palma | I | 20 | 33 to 41 months |
| Damian Wayne Scarlett | I | 22[5] | 41 to 51 months |
| CK Chikong Tran | I | 22 | 41 to 51 months |
| Tyree Samuel Tinsley | I | 22 | 41 to 51 months |

Respectfully submitted,

CATHERINE L. CROSBY
Acting United States Attorney

*/s/ John M. Hundscheid*

John M. Hundscheid
Assistant United States Attorney

---

[5] The Probation Office applied a two-level aggravating role enhancement under U.S.S.G. § 3B1.1(c) in calculating Scarlett's offense level. The United States does not believe this enhancement should apply. It requires that "the defendant exerted some control, influence or decision-making authority over another participant in the criminal activity." *United States v. Martinez*, 584 F.3d 1022, 1026 (11th Cir. 2009). Moreover, the enhancement is aimed at assessing the "relative responsibility" of the defendant, and none of the factors weigh in favor of applying a management enhancement to Scarlett's offense level. U.S.S.G. § 3B1.1, cmt. 4. Scarlett's proper comparators are the other members of Noir's Organization. Scarlett did not exert more discretion or control than other conspirators. He is more culpable than the service's customers, but those are not proper comparators. There is a "critical distinction between a conspiratorial agreement and a buyer-seller transaction." *United States v. Mercer*, 165 F.3d 1331, 1335 (11th Cir. 1999). Because customers simply had a buyer-seller relationship with Noir's Organization, they were not "criminally responsible for the commission of the offense" and so are not considered participants. U.S.S.G. § 3B1.1, cmt. 1. The fact that Scarlett "had writer permissions for two spreadsheets [,] . . . performed a significant number of refunds[,] … [and] shared information about how the group could use virtual credit cards to acquire inventory through refund fraud" does not show that Scarlett exercise decision-making authority over another conspirator. (PSR, ¶ 98.)

19

**CERTIFICATE OF SERVICE**

I hereby certify that on April 9, 2026, I filed a copy of the foregoing with the

Court through CM-ECF, which caused a copy to be served on counsel of record.


*/s/ John M. Hundscheid*

John M. Hundscheid
Assistant United States Attorney